**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **NURJAKHON ZOKIROV,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-2140-D** |
| | ) | |
| **CHRIS GANTT, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

# REPORT AND RECOMMENDATION

Petitioner Nurjakhon Zokirov, a citizen of Uzbekistan proceeding with counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2] United States District Judge Timothy D. DeGiusti referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 3). In accordance with the expedited briefing schedule, (Doc. 7), Respondents timely filed a Response, (Doc. 9), and Petitioner timely filed a Reply, (Doc. 11). As fully set forth below, the undersigned recommends that the Petition be **GRANTED in part** because Petitioner's detention without a bond hearing violates the Immigration and Nationality Act ("INA"). The Court should order an individualized bond hearing before a neutral

---

[1] Petitioner is housed at Cimarron Correctional Facility in Cushing, Oklahoma. (Doc. 1, at 2).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

immigration judge within 7 days of the judgment in this matter, or else release Petitioner from custody.

## I. Factual Background and Procedural History

Petitioner is a citizen of Uzbekistan who entered the United States on April 16, 2023. (Doc. 9, at Ex. 1, at 1). That day, Petitioner applied for admission at the port of entry, received a Notice to Appear that charged him as removable, and was paroled into the country. (*Id.*; Doc. 1, at 10). Petitioner's parole was set to expire on April 18, 2025. (Doc. 1, at 10). On April 27, 2023, Petitioner filed a Form I-589, Application for Asylum and Withholding of Removal, which remains pending. (Doc. 9, at Ex. 2, at 2). Nothing in the record indicates Petitioner's parole was ever extended. Therefore, Petitioner's parole expired on April 18, 2025.

On or about July 29, 2026, Petitioner stopped at a weigh station for inspection while he was operating a commercial motor vehicle. (*Id.*; Doc. 1, at 10). Petitioner showed his non-domiciled Pennsylvania driver's license to the officer conducting his inspection, and the officer requested an immigration records check through ICE/OKC 287g deportation officers. (Doc. 9, at Ex. 2, at 2). The 287g deportation officers confirmed Petitioner's unlawful presence, and Petitioner was arrested and subsequently transferred to ICE custody. (*Id.*) Petitioner asserts that he did not commit any violation. (Doc. 1, at 10). Prior to his arrest, Petitioner had no criminal history. (Doc. 9, at Ex. 2, at 3). Petitioner asserts that Respondents did not provide any meaningful opportunity to be heard before he was taken into custody. (Doc. 1, at 12). Petitioner has not been provided with a bond hearing since his arrest. (*Id.* at 2). The immigration court scheduled a Master Calendar

Hearing for September 2, 2026, and the proceedings remain ongoing. (Doc. 9, at Ex. 5, at 1). Thus, Petitioner does not have a final order of removal.

## II. Petitioner's Claims and Respondents' Responses

Petitioner makes the following claims in support of his Petition:

- Because Petitioner was released on parole, his re-detention without sufficient pre-deprivation process violated the Fifth Amendment Due Process Clause. (Doc. 1, at 11-12).
- Detaining Petitioner under the mandatory detention provisions of 8 U.S.C. § 1225(b) violates the INA because Petitioner is only properly detained under 8 U.S.C. § 1226(a). (*Id.* at 13).

Petitioner argues that "former parolees who are later re-detained after parole expires are properly detained pursuant to the non-mandatory provision of 8 U.S.C. § 1226(a)." (*Id.* at 7). Petitioner also submits that, under the balancing test of *Mathews v. Eldrige*, 424 U.S. 319 (1976), "detention of noncitizens without an individualized custody determination violates procedural due process." (*Id.* at 9). For relief, Petitioner requests immediate release, or, alternatively, a bond hearing.[3] (*Id.* at 2).

Respondents argue that Petitioner is properly subject to mandatory detention under 8 U.S.C. § 1225(b)(1) because, despite his grant of parole, Petitioner is still an "arriving

---

[3] Petitioner's request for fees and costs under the Equal Access to Justice Act is premature. *See* 28 U.S.C. § 2412(d)(1)(B); *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025).

Additionally, his Court lacks jurisdiction to grant Petitioner's request for an order prohibiting Petitioner's transfer. *See Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (observing that "the Attorney General is mandated to arrange for appropriate places of detention for [persons] detained pending removal" and holding in a civil rights lawsuit "a district court has no jurisdiction to restrain the Attorney General's power to transfer [ICE detainees] to appropriate facilities by granting injunctive relief").

alien" under the entry-fiction doctrine. (Doc. 9, at 5). "[I]f the Court finds he is detained under § 1226(a) pursuant to" the Tenth Circuit's recent decision in *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026), Respondents alternatively "request that this Court limit any relief to ordering a bond hearing within seven days without ruling on Petitioner's due process claims." (*Id.* at 8). Respondents also submit that due process itself does not require a bond hearing. (*Id.* at 10).

In his Reply, Petitioner reiterates that "a former parolee re-detained in the interior is detained under § 1226(a)" and that the denial of a bond hearing requires habeas relief under *Mathews*. (Doc. 11, at 4, 9).

## III. Standard of Review

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Parole Termination Regulatory Framework

Automatic termination of parole is governed by 8 C.F.R. § 212.5(e)(1), which states, "Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized." As Judge Jones recently put it, "the regulation is clear:

parole 'shall' terminate 'at the expiration of the time for which parole was authorized.'" *Horta Valdovinos v. Warden, Cimarron Corr. Facility*, No. CIV-26-924-J, 2026 WL 2200432, at *2 (W.D. Okla. July 30, 2026) (denying immediate release and holding that the petitioner's parole had automatically terminated without requiring any individualized determination). When parole expires automatically under § 212.5(e)(1), the government need not do anything else to terminate parole. Accordingly, Petitioner's parole automatically terminated when it expired on April 18, 2025.

## V. Petitioner's Re-detention Did Not Violate Due Process.

Petitioner also claims that he is entitled to immediate release because his due process rights were violated when he was re-detained without an individualized, pre-deprivation custody determination. (Doc. 1, at 12). He claims that, after release on parole, re-detention "without notice, explanation, or an individualized custody determination violates procedural due process." (*Id.*)

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted). The undersigned analyzes Petitioner's procedural due process claim "in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines

whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (holding that parolees have a liberty interest in their physical freedom); *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sep. 26, 2025) ("When the government grants [a non-citizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment."); *Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'"); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Here, Petitioner was deprived of his liberty when he was re-detained following the termination of his parole.

Turning to step two, the undersigned finds that the procedures under which Petitioner was re-detained, following the termination of his parole, did not violate due process and that he was not entitled to any additional process. Petitioner argues that re-detention after a grant of parole requires notice. (Doc. 1, at 12). However, Petitioner received notice on April 16, 2023, that his parole would expire on April 18, 2025. (*Id.* at 10). Petitioner does not explain why further notice would be required on or after the date his parole was automatically terminated. *See Horta Valdovinos*, 2026 WL 2200432, at *2 (finding that under the regulation that automatically terminates parole without notice, petitioner was not entitled to notice).

Petitioner argues that his re-detention violated due process because he was not given a pre-deprivation opportunity to be heard. (Doc. 1, at 12). However, Petitioner's prior grant of parole provides no basis for additional process because it automatically terminated months before his re-detention. *See Horta Valdovinos*, 2026 WL 2200432, at *2 (rejecting the argument that the petitioner was entitled to any individualized determination when parole expired automatically). The termination of Petitioner's parole placed him in the same position as anyone else spending months unlawfully present in the interior of the United States. *See* 8 U.S.C. § 1182(d)(5)(A) ("[T]hereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.").

As discussed below, a non-citizen in Petitioner's circumstance falls under 8 U.S.C. § 1226(a), which requires a post-deprivation bond hearing. *See Santillan Quiroz*, 180 F.4th at 1237. When Petitioner has not yet received a bond hearing under § 1226(a), the process due to him is the bond hearing mandated by § 1226(a). *See, e.g.*, *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025) ("Because this Court holds that § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226 — namely, an individualized bond hearing before an IJ.").

The undersigned concludes that Petitioner's re-detention, which followed the automatic termination of Petitioner's parole upon its expiration, did not violate Petitioner's due process rights. Therefore, the Court should find Petitioner is not entitled to immediate release.

## VI. Petitioner's Instant Detention Is Governed by § 1226(a), and He Is Entitled to a Bond Hearing.

The majority of the District Judges in this Court have "rejected Respondent's argument that the termination of a noncitizen's humanitarian parole automatically reverts his status to that of an 'arriving' noncitizen subject to mandatory detention under § 1225(b)[1]" and have instead found "[w]here, as here, Petitioner was paroled into the United States, permitted to reside in the country for several years, and his current detention is not part of the inspection process or attempted entry, Petitioner's detention is more naturally characterized as detention pending a decision on whether the alien is to be removed from the United States within the meaning of § 1226(a)." *Romero Lopez v. Warden/Adm'r, Diamondback Corr. Facility*, No. CIV-26-1090-R, 2026 WL 2643713, at *1 (W.D. Okla. Sep. 8, 2026) (citation modified) (collecting cases). *See also Bello Rodriguez v. Diamondback Installation Dir.*, No. CIV-26-1188-D, 2026 WL 2364679, at *1 (W.D. Okla. Aug. 14, 2026) (finding that "[t]he Court has previously found that § 1225(b)(1) doesn't apply in circumstances where the noncitizen has resided in the United States for several years before their parole under § 1182(d)(5) is revoked" and granting a bond hearing under § 1226(a)) (citation modified) (collecting cases); *Zhakhonov v. Grant*, No. CIV-26-350-J, 2026 WL 1865418, at *2-3 (W.D. Okla. June 29, 2026) (finding "that Petitioner's termination of humanitarian parole did not automatically return him to mandatory detention under § 1225(b)(1)" and that "Petitioner's present detention is governed by § 1226(a)"); *Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 WL 1470929, at *2 (W.D. Okla. May 26, 2026) ("[R]evocation of parole under § 1182(d)(5) does not render

a noncitizen in Petitioner's circumstances subject to detention under § 1225(b)(1).”); *Kudusov v. Grant*, No. CIV-26-132-HE, ECF No. 13, at *3-4 (W.D. Okla. Mar. 11, 2026) (finding “‘noncitizens who remain in the United States after their [humanitarian] parole ended are not arriving aliens’” and “conclud[ing] that § 1226(a) governs petitioner's detention, and thus, he is entitled to an individualized bond hearing”). *But see Kvaratskhelia v. Blanche*, CIV-26-1673-JD, Doc. 13, at 7 (W.D. Okla. Sep. 29, 2026).

In light of the persuasive reasoning from Chief Judge Palk, Judge DeGiusti, Judge Jones, Judge Russell, and Judge Heaton, the undersigned recommends finding Petitioner – who was released on humanitarian parole after arriving at a port of entry and later detained within the United States after living here for over two years – is detained under 8 U.S.C. § 1226(a). Individuals detained under § 1226(a) are entitled to a bond hearing. § 1226(a)(2). *See Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026) (“[N]oncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond).”). Because Petitioner is subject to § 1226(a) and has not received a bond hearing, Petitioner has shown that he is in custody in violation of the laws of the United States, and he is entitled to habeas relief. 28 U.S.C. § 2241(c)(3). While Petitioner seeks immediate release, a bond hearing is the appropriate remedy. *Santillan Quiroz*, 180 F.4th at 1251 n.13.[4]

---

[4] Under current BIA precedent, the non-citizen bears the burden of proving lack of dangerousness or flight risk at a § 1226(a) bond hearing. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021). Judges in this District have either declined to decide whether due process requires shifting the burden to the government, *see Velazquez v. Johnson*, No. CIV-26-1111-J, 2026 WL 1999247, at *1 (W.D. Okla. July 10, 2026); *Karimov v. Grant*, No. CIV-26-639-J, 2026 WL 1493969, at *1 (W.D. Okla. May 28,

## VII. Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition, (Doc. 1), be **GRANTED in part**. The undersigned recommends that the Court order Respondents to provide Petitioner an individualized bond hearing before a neutral immigration judge within 7 days of the judgment in this matter, or else release him from custody.

**The undersigned advises the parties of their right to object to this Report and Recommendation by October 23, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[5] Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

---

2026); *Rangel v. Mullin*, No. CIV-26-568-D, *Singh v. Figueroa*, No. CIV-26-600-R, or concluded that it does not. *See Adediran v. Figueroa*, No. CIV-26-801-J, *Pupo Socarras v. Figueroa*, No. CIV-26-0571-HE, 2026 WL 2100499, at *1 (W.D. Okla. July 21, 2026); *Toro v. Mullin*, CIV-26-315-JD, Doc. 19, at 18 (W.D. Okla. May 12, 2026).

[5] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

**ENTERED** this 16th day of October, 2026.

Amanda L. Maxfield

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE